IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARITZA CORREA-VARGAS

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 23-1368 (MEL)

**OPINION AND ORDER**

I.   **PROCEDURAL AND FACTUAL BACKGROUND**

Pending before the court is Ms. Maritza Correa-Vargas's ("Plaintiff") complaint challenging the decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 1. On January 17, 2020, Plaintiff filed an application for Social Security benefits. Tr. 705. Plaintiff alleged that she initially became unable to work due to disability on January 31, 2019 (the "onset date"). Tr. 33. Prior to the onset date, Plaintiff's past relevant work was in data entry and as an executive administrative assistant. Tr. 41. Plaintiff's claim was initially denied on July 14, 2020, but she filed for reconsideration. Tr. 603, 619. The Commissioner affirmed the initial determination on October 8, 2020. Tr. 619.

At Plaintiff's request, a telephone hearing was conducted on March 28, 2022, before ALJ Hortensia Haaversen ("the ALJ"). Tr. 94-109. The hearing resulted in denial of Plaintiff's disability and benefits claim request on May 25, 2022. Tr. 25-49. Plaintiff appealed the ALJ's decision. After review on May 19, 2023, the Appeals Council affirmed the ALJ's decision, rendering it the final decision of the Commissioner, subject to judicial review. Tr. 1-9. Plaintiff filed a complaint on September 28, 2023, challenging the ALJ's decision. ECF No. 1. The Commissioner opposed Plaintiff's challenge, and both parties have filed supporting memoranda. ECF Nos. 10, 15.

## II. LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. *See Ortiz*, 955 F.2d at 769 (citing *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.

1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *Id*. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability under the Social Security Act

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Yuckert*, 482 U.S. at 140–42. If it is conclusively determined that plaintiff is or is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). However, if the ALJ cannot conclusively determine whether a plaintiff is or is not disabled at a given step, then the analysis will proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent her from doing the type of work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functioning capacity ("RFC"). *Id*. If the ALJ concludes that plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### III.    THE ALJ'S DECISION

In the decision dated May 25, 2022, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act through March 31, 2024, the date of the prior award. Tr. 33. At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the onset date of January 31, 2019, through the end of the relevant period. *Id*. At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, obstructive sleep apnea and obesity. *Id*. The ALJ also found Plaintiff had non-severe impairments of hypertension and depression. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of

one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 36. Next, the ALJ determined that during the relevant period:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could lift and carry 20 pounds occasionally and 10 pounds frequently, stand or walk 6 hours of an 8-hour workday; and sit 6 hours of an 8-hour workday. She could frequently climb ramps, stairs, climb ladders, ropes or scaffolds; stoop kneel, crouch or crawl; frequently reach overhead on the right. She had to avoid concentrated exposure to no more than occasional to dust, fumes, odors, chemical irritants and poor ventilation; and avoid concentrated exposure to less than occasional exposure to unprotected heights, cutting or moving machinery and never any commercial driving.

Tr. 37. At step four, the ALJ determined that Plaintiff is capable of performing past relevant work as an "executive administrative assistan[t] as generally performed and as data entry as generally and actually performed" because "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." Tr. 41. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert ("VE"). Tr. 42. The VE testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: assembly production, marker, and clerk. Tr. 42-43. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 43.

## IV.   LEGAL ANALYSIS

Plaintiff advances three arguments challenging the ALJ's determination at step two, one argument challenging the ALJ's RFC assessment, and one final argument challenging the ALJ's determination at step five. *See generally* ECF No. 10. The Commissioner responds asserting that the ALJ's decision was supported by substantial evidence and that Plaintiff's challenge requires the Court to reweigh the evidence, which is something the Court may not do. ECF No. 15 at 1-2. The court will address each argument in turn.

### A. The ALJ's Step Two Determination

At step two, the ALJ found that Plaintiff had severe impairments of degenerative disc disease, obstructive sleep apnea, and obesity. Tr. 33. The ALJ also found Plaintiff had non-severe impairments of hypertension and depression.[1] *Id*. Plaintiff challenges the ALJ's finding that her major depressive disorder is a non-severe impairment. Plaintiff advances three distinct arguments in support of this challenge. First, Plaintiff argues that the ALJ did not follow the psychiatric review technique ("PRT"), thus violating Program Operations Manual System ("POMS") DI 24583.005. ECF No. 10 at 22. Second, Plaintiff argues that the ALJ did not take into account medical opinions that that her depression was more than a mild limitation. *Id*. at 23-24. Third, Plaintiff argues that the ALJ failed to consider that her non-severe impairments, in combination, produced a severe impairment, in violation of Social Security Rulings ("SSR") 96-8p and 85-28. *Id*. at 25.

The Court finds that because the ALJ found at least one severe impairment at step two and continued in the evaluation process, the finding of severe or non-severe as to Plaintiff's depression is, if erroneous, harmless as the ALJ considered all Plaintiff's impairments when formulating the RFC. *See Acosta Diaz v. Comm'r of Soc. Sec,* No. 21-1442*,* 2023 WL 142364, at *6 (D.P.R. Jan. 10, 2023) ("Even if the ALJ erroneously found that some of the claimant's impairments are non-severe at step two, the error is harmless if the ALJ continues the sequential analysis and considers both the claimant's severe and non-severe impairments when formulating the RFC.") (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Mason v. Astrue*, 2013 WL 391172 at *4 (D.N.H. Jan. 30, 2013); 20 C.F.R. § 404.1545(a)(2)). However, the Court will still analyze Plaintiff's arguments regarding the ALJ's determinations at step two.

---

[1] Plaintiff does not challenge the ALJ's finding as it relates to hypertension.

1. **Psychiatric Review Technique**

In evaluating medically determinable mental impairments at steps two and three of the sequential evaluation process, a special technique, the PRT, is used to assist in the process. *See* POMS DI 24583.005(A). At the initial and reconsideration levels, the "medical or psychological consultant (MC or PC) has the overall responsibility for assessing medical severity." POMS DI 24583.005(G)(1). At the hearing level, the ALJ must "[i]ncorporate the pertinent findings and conclusions based on the PRT; [s]how the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s); and [i]nclude a specific finding as to the degree of limitation in each of the areas of mental functioning." POMS DI 24583.005(G)(2). The PRT is used by following these steps:

> First, determine whether the person has a medically determinable mental impairment(s) (see DI 24583.005C); [s]econd, rate the degree of functional limitation resulting from the mental impairment(s) (see DI 24583.005D); [t]hird, determine the severity of the mental impairment(s) (see DI 24583.005E); [f]ourth, determine whether the mental impairment(s) meet or medically equals a listed impairment (see DI 24583.005F); and [f]ifth, document the application of the PRT (see DI 24583.005G).

POMS DI 24583.005(B). To rate the degree of functional limitation, the ALJ is called upon to "consider such factors as the quality and level of overall functional performance, any episodic limitations, the amount of supervision or assistance required, and the settings in which the person is able to function."[2] POMS DI 24583.005(D). The degree is rated in four areas commonly referred to as the "Paragraph B" criteria: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace; and (4) adapting to manage oneself. *Id*. The degree of limitation in each of these areas is rated on a five-point scale:

---

[2] There is no controversy that there is a medically determinable mental impairment. Thus, the Court moves immediately to assessing the second PRT step. ECF No. 10 at 16.

none, mild, moderate, marked, and extreme. *Id*. In the third step, if the degree of the limitation is determined to be "none" or "mild," the ALJ will generally conclude that the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation is the ability to do basic work activities." POMS DI 24583.005(E). At the fourth step, the ALJ compares the medical evidence of record about the mental impairments and the rating of the degree of a functional limitation with the criteria of the appropriate listed mental disorder to determine the severity. POMS DI 24583.005(F).

A review of the ALJ's decision shows that the ALJ properly conducted the step two analysis. Specifically, the ALJ took into consideration the assessments of severity by State Agency medical consultants applying the PRT, noting that the State Agency consultants "deemed the mental impairment as non-severe."[3] Tr. 35. Then, the ALJ followed the PRT steps outlined in POMS DI 24583.00. The ALJ first determined that Plaintiff had a medically determinable mental impairment of depression. Tr. 35. In the next step, the ALJ conducted a thorough analysis of the Paragraph B criteria to rate the degree of functional limitation resulting from the mental impairment, finding a mild limitation in all three areas. Tr. 35-36. The ALJ noted that the State Agency consultants' assessment of Plaintiff's medical severity was "in line and consistent with the findings of mental status examinations in the consultative examination [by Dr. Angel Egozcue Rosario M.D. ("Dr. Egozcue")] and the unremarkable findings of treatment notes from [Plaintiff's psychiatrist, Dr. Ariel Rojas Davis M.D. ("Dr. Rojas")]." Tr. 35. The ALJ may rely on State Agency consultants; however, the ALJ here still considered other medical opinions of record at step two. *See Cruz Centeno*, 2009 WL 3061972, at *7 (D.P.R. Sept. 22, 2009).

---

[3] First, at the initial and reconsideration levels, the State Agency medical consultants assessed medical severity, applying the PRT. Tr. 595-97; 612-13. At the initial level, the State Agency psychological consultant found a mild limitation in for all Paragraph B criteria. Tr. 595. The same mild limitations were found at the reconsideration level. Tr. 612.

For the first area, in assessing Plaintiff's ability to understand, remember, or apply information, the ALJ took into consideration Plaintiff's "allegations that she was forgetful and had difficulties to maintain attention and follow instructions." Tr. 35, 139, 799. The ALJ also considered a consultative examination by Dr. Egozcue, finding that Plaintiff's "thought processes were logical, coherent, and relevant" that Plaintiff was "well oriented in time, place and person. She had adequate, recent, immediate, short term and remote memory skills. Her attention appeared to be adequate as well, [and s]he was able to perform simple arithmetic and interpret abstract thoughts." Tr. 35, 1099-91.

In assessing Plaintiff's ability to interact with others, the ALJ considered Plaintiff's Adult Function Report in which Plaintiff's son alleged that Plaintiff could not go out alone or drive, Dr. Egozcue's findings that Plaintiff participated in social activities, like attending church on Sundays and seeing her family, and Dr. Egozcue's impression of Plaintiff during the interview, namely, that she was "spontaneous during the interview[,] she established good rapport with the interviewer," and "was cooperative [and] readily answering questions." Tr. 35, 1089, 1090.

With regard to concentrating, persisting, or maintaining pace, the ALJ again considered Plaintiff's own allegations as well as Dr. Egozcue's examination of Plaintiff. Tr. 35. Specifically, the ALJ noted that despite Plaintiff's allegations that she could not handle her funds and had difficulties maintaining attention and following instructions, "in the consultative examination performed by Dr. Egozcue, [Plaintiff's] thought process was logic, coherent, and relevant." *Id*. Dr. Egozcue further found that Plaintiff's attention level was well sustained, as was her ability to concentrate. Tr. 35, 1091.

For the fourth and final area, adapting or managing oneself, the ALJ took into consideration Plaintiff's ability to do household chores, bathe herself, care for her hair, and feed herself, finding that while she occasionally needs help from family, she has "adequate initiative and persistence to

9

perform tasks within her condition." Tr. 36. Therefore, the ALJ properly applied the PRT at step two of the determination process.

   2.  **Medical Opinions**

Next, Plaintiff argues that the ALJ did not take into consideration, or alternatively misconstrued the medical opinions of Dr. Rojas and Dr. Egozcue, contending that the medical evidence, in conjunction with the opinions of the medical experts and the PRT paints a "much different picture tha[n] the one the ALJ paints, with regards to the severity of [P]laintiff's mental impairments and her RFC."[4] ECF No. 10 at 23.

Plaintiff points to progress and treatment notes from Dr. Rojas that point to moderate, not mild, limitations. *Id*. Specifically, Plaintiff points to Dr. Rojas's Psychiatric Medical Report conducted on March 3, 2019, which describes Plaintiff as having a "depressed mood," "decreased

---

[4] Additionally, Plaintiff argues that her psychiatrist never gave her a GAF store above 60 to argue that the finding of non-severe for her depression was in error. The GAF "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ["DSM-IV-TR"], quoted in *Langley v. Barnhart*, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). It "considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM–IV–TR at 34 (brackets omitted), quoted in *Echandy–Caraballo v. Astrue*, 2008 WL 910059 at *4 n. 7 (D.R.I. Mar. 31, 2008). A GAF score between 41 and 50 "is described as '[s]erious symptoms … OR any serious impairment in a social, occupational, or school functioning….'" *Hernández v. Comm'r of Soc. Sec.*, 989 F. Supp. 2d 202, 207 n.2 (D.P.R. 2013) (emphasis in original) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000)). While "a score 51–60 indicates moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Negrón v. Colvin*, Civ. No. 13-1926 (CVR), 2015 WL 1499144, at *4 n.4 (D.P.R. Apr. 1, 2015). "A GAF score in the 61–70 range indicates that one has some mild symptoms or some difficulty in social, occupational or school functioning, but generally functions pretty well and has some meaningful relationships." *Stanley v. Colvin*, Civ. Action No. 11-10027-DJC, 2014 WL 1281451, at *5 n.5 (D. Mass. Mar. 28, 2014) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32–34 (4th ed. text rev. 2000)). However, since 2013, the GAF score is no longer used in the Diagnostic and Statistics Manual of Mental Disorders. *Negrón v. Colvin*, Civ. No. 13-1926 CVR, 2015 WL 1499144, at *4 n.4 (D.P.R. Apr. 1, 2015); *Hall v. Colvin*, 18 F. Supp. 3d 144, 153 (D.R.I. 2014) (citing Am. Psychiatric Ass'n, *Diagnostic and Stat. Manual of Mental Disorders DSM–5* 16 (5th ed. 2013)). On July 22, 2013, the Social Security Administration published Administrative Memorandum AM-13066 in order to guide adjudications on using GAF scores. *Bourinot v. Colvin*, 95 F. Supp. 3d 161, 178 (D. Mass. 2015). This memorandum "indicates that the SSA will continue to receive and consider GAF scores just as it would other opinion evidence, but scores must have supporting evidence to be given significant weight." *Id.* (citing *Kroh v. Colvin*, Civ. No. 3:13-CV-01533, 2014 WL 4384675, at *18 (M.D. Pa. Sept. 4, 2014)). Here, the GAF score is inconsequential because there is substantial evidence to support a finding of non-severe for Plaintiffs discussed, as is discussed at length in this opinion. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769-70 (1st Cir. 1991).

attention, concentration, insight, and judgment," "frequent episodes of anxiety," "moderate difficulties with immediate and short term memory," poor "stress tolerance," inability to "pay attention because she gets distracted easily," and the inability to "handle funds." ECF No. 10 at 23. However, the ALJ also took into consideration Dr. Rojas's treatment notes of Plaintiff. The ALJ discussed that while the notes describe Plaintiff as "anxious, ill-tempered and depressed," the notes also describe Plaintiff as "well-groomed and cooperative," with appropriate affect and normal speech, noting "no memory deficits" and that her "[t]hough[t] process was coherent and relevant." Tr. 34, 1363-77, 1399-1400, 1407-08.

Plaintiff also argues that Dr. Egozcue's consultative examination conducted on February 5, 2020, requires a finding that Plaintiff has a "higher degree of functional limitations than mild or slight." *Id*. at 24 (internal quotations omitted). Plaintiff argues that these findings "directly contradict the ALJ's statements and conclusions." *Id*. Dr. Egozcue diagnosed Plaintiff with major depressive disorder, noting that it was "recurrent and severe."[5] Tr. 1097. The ALJ acknowledged Dr. Egozcue's diagnosis, but noted that Dr. Egozcue also "recognized that [Plaintiff] had adequate insight, adequate social skills, could handle her funds and make decisions regarding her well-being and personal security." Tr. 34. After reviewing all the aforementioned findings, the ALJ determined that Plaintiff's impairment of depression "does not cause more than a minimal limitation in her ability to perform basic mental work activities and is therefore nonsevere." Tr. 35.

The ALJ noted Dr. Egozcue's conclusion that the claimant would not be able to work. Tr. 34. However, ultimately, the ALJ found that conclusion to be unpersuasive, noting that although "[Plaintiff] might have some memory issues and suffers from sleep apnea, the examination

---

[5] Whether a diagnosed impairment is considered severe or non-severe is for the ALJ to determine after considering the four broad areas of mental functioning delineated in the "Paragraph B criteria." 20 C.F.R. § 404.1520a(d)(1). Thus, a claimant can have either severe or non-severe major depressive disorder.

performed by Dr. Egozcue clearly presents unremarkable findings" because "[a]lbeit depressed and anxious; [Plaintiff's] memory was good, attention was adequate, concentration and attention were adequate and she was oriented in all three spheres." Tr. 35. The ALJ then compared these findings with Dr. Rojas's report, and findings by State Agency medical consultants, noting that the findings were consistent with Dr. Egozcue's treatment notes. *Id*. Moreover, any conclusions as to whether Plaintiff is "disabled" or able to work are legal conclusions and administrative decisions that are to be made by the Commissioner, not by medical personnel. 20 C.F.R. § 404.1527(e); *see Rivera v. Comm'r of Soc. Sec.*, 2010 WL 132329, at *5 (D.P.R. Jan. 8, 2010) ("[W]hile [his physician] believed that [c]laimant was disabled and unable to work, disability under the Act is a legal determination that is reserved to the ALJ, and medical experts are not qualified to render this ultimate legal conclusion.") (citing *Frank v. Banhart*, 326 F.3d 618, 620 (5th Cir. 2003) (internal citation omitted); *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d 333, 335 (D.P.R. 2007) ("The resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the ALJ, not for the doctors or for the reviewing Courts.") (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Therefore, the ALJ properly considered the medical opinions of Dr. Egozcue and Dr. Rojas in conducting her step two determination.

### 3. Combination of Severe and Non-Severe Impairments

After conducting the Paragraph B analysis, the next step of the PRT is to determine the severity of the mental impairment. Finding no more than a mild limitation in any of the functional areas, the ALJ thus determined that the mental impairment of depression was non-severe. Tr. 36 (citing 20 CFR 404.1520a(d)(1)). Plaintiff argues that the ALJ did not consider Plaintiff's severe and non-severe impairments in combination, in violation of SSR 96-8. ECF No. 10 at 24-25. In other words, Plaintiff argues that while her depression may not be severe on its own, it is when combined with her other severe impairments. *Id*. at 25. Specifically, Plaintiff points to Dr. Egozcue's report,

which suggests a link between Plaintiff's sleep apnea and her depression, noting that this link may have an impact on the effectiveness of Plaintiff's medications. Tr. 1091-92. This argument is unconvincing for two main reasons.

First, the ALJ does not specifically mention her analysis of sleep apnea in combination with depression; however, that does not necessarily mean that the ALJ did not consider both impairments in her analysis in practice, especially where the ALJ's report refers to assessing a combination of impairments. *See Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) ("An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings."). Here, the ALJ made several references to addressing all of Plaintiff's impairments. *See e.g.*, Tr. 36 ("The undersigned considered all of claimant's medically determinable impairments, *including those that are not severe*, when assessing the claimant's residual functional capacity.") (emphasis added). Moreover, the ALJ explicitly mentions both Plaintiff's severe and non-severe impairments in determining her RFC. Tr. 38 ("Albeit she suffers from documented degenerative disc disease, sleep apnea, and obesity along with non-severe depression and hypertension; the limitations imposed by these, have not precluded work."). The ALJ discussed Plaintiff's non-severe limitations at length in her decision and provided adequate explanation to show that she considered the combined effect of the impairments as to allow proper judicial review.

Second, Plaintiff points to no evidence, beyond the one note by Dr. Egozcue, that her sleep apnea, in combination with her depression, qualifies as a severe impairment. Admittedly, the court could undertake an exploratory journey in the record to verify the merit of Plaintiff's argument. This would entail, among other things, analyzing all the medical evidence, all of Plaintiff's testimony, and all of Plaintiff's symptoms. However, doing so would encourage Plaintiff's counsel to continue

submitting briefs with skeletal arguments. *See United States v. Oliver*, 878 F.3d 120, 127 (4th Cir. 2017) ("Habitual sua sponte consideration of a forfeited issue disincentivizes vigorous advocacy and thereby chips away at the foundation of our justice system."). The court finds no reason to condone or do the job of Plaintiff's counsel. *United States v. Parsons*, 141 F.3d 386, 390 (1st Cir. 1998) ("It is counsel's job on appeal to mine the record and prove the alleged error, not to offer suggestive hints and leave the rest of the work to a busy court."); *Rodríguez-Machado v. Shinseki*, 700 F.3d 48, 50 (1st Cir. 2012) ("[D]oing [Plaintiff's] work for her is not an option, since that would divert precious judge-time from other litigants who could have their cases resolved thoughtfully and expeditiously because they followed the rules."). Accordingly, Plaintiff's argument concerning the ALJ's analysis of Plaintiff's severe and non-severe impairments is waived.

In sum, at step two, the ALJ's conclusion that Plaintiff's medically determinable impairment of depression did not cause more than a minimal limitation in Plaintiff's ability to perform basic work-related activities and was thus, non-severe, is supported by substantial evidence. Having determined that Plaintiff suffered from three severe conditions, the ALJ correctly moved on in the evaluation process to determine whether Plaintiff had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525 and 404.1526. At this step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, and correctly proceeded to determine Plaintiff's RFC.

### B. The ALJ's RFC Determination

Plaintiff argues that the ALJ erred when she determined that Plaintiff had the RFC to perform work at a "light exertional level" with some additional limitations. Tr. 37. Plaintiff argues combining her physical and mental impairments should have resulted in a finding that she can perform work at

a "sedentary exertional level." ECF No. 10 at 26. However, there are two problems with this argument.

First, in making the argument that the ALJ should have found that Plaintiff could perform work at a sedentary exertional level, Plaintiff relies on her contention that her depression is a severe limitation or that, in combination with her severe impairments, can be considered severe. However, as previously discussed, the ALJ did not err in finding Plaintiff's depression to be non-severe both alone and in combination with her other severe and non-severe impairments. In fact, as discussed below, the ALJ did consider Plaintiff's depression, as well as her other non-severe limitations, in determining her RFC. Tr. 38.

Second, Plaintiff does not meet her burden of persuasion and "has not otherwise demonstrated that any additional restrictions are warranted." *Tyler H. v. Saul*, 2019 WL 2648446, at *3 (D. Me. June 27, 2019). Plaintiff argues that she "suffers from multiple severe impairments, including degenerative disc disease of the cervical spine and lumbar spine, osteoarthritis, obstructive sleep apnea, and bronchial asthma, as well as from severe emotional impairments." ECF No. 10 at 26. However, Plaintiff does not explain which impairment the ALJ did not adequately consider in her RFC analysis, nor does she explain what leads to a finding of a sedentary, as opposed to a light work exertional level. Instead, Plaintiff simply posits that these "impairments and the combination of them, limit [P]laintiff's RFC to a narrowed range of sedentary work with severe postural, manipulative and mental emotional/limitations." *Id*. at 26. Plaintiff has the burden of production and persuasion at steps one through four of the evaluation process and must produce evidence sufficient to demonstrate that her limitations warrant a finding of a sedentary exertional level. *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001); *Yuckert*, 482 U.S. at 146. Without Plaintiff connecting the dots, the Court's only option is to reweigh the evidence, something it cannot do. *Colon v. Sec'y*

*of Health & Hum. Servs.*, 877 F.2d 148, 153 (1st Cir. 1989) ("[T]he district court simply has no authority to reweigh the evidence and substitute its judgment for that of [the Commissioner.]").

While it is unclear what exactly Plaintiff alleges the ALJ did not consider in her RFC determination, it is clear that the ALJ took into consideration all of Plaintiff's severe and non-severe impairments, including: degenerative disc disease of the cervical spine and lumbar spine, osteoarthritis, obstructive sleep apnea, and bronchial asthma. Tr. 38-39. The ALJ discusses Plaintiff's degenerative disc disease of the cervical spine and lumbar spine, and discusses her long history of treatment. *Id*. Noting that, "[d]espite her continuous complaints of pain, she was continuously observed able to ambulate without difficulties," and "[d]espite being diagnosed with cervical radiculopathy and herniated discs at the C6-C7 level, she was able to continue[] working until 2019." Tr. 39. Regarding Plaintiff's osteoarthritis, the ALJ discusses Plaintiff's treatment, discussing the care Plaintiff received from Rheumatologist Lee Ming Shum, M.D., and finding that the studies revealed "mild degenerative changes" and that the x-rays showed "signs consistent with <u>mild</u> osteoarthritic changes." *Id*. (emphasis in original). The ALJ then discusses Plaintiff's obstructive sleep apnea, noting that she has improved with the use of a CPAP-machine. *Id*. Last, the ALJ discusses Plaintiff's bronchial asthma, noting that her treatment was conservative in nature. *Id*. The ALJ even included limitations in her RFC that clearly accommodate her asthma. Tr. 37 ("She had to avoid concentrated exposure to no more than occasional to dust, fumes, odors, chemical irritants and poor ventilation"). The ALJ even discusses Plaintiff's non-severe limitations of depression and hypertension. Tr. 38-40. The ALJ found the opinion of State Agency medical consultants "partially persuasive," and also took into consideration the opinion of consultative examiner Efrain Carrasquillo M.D. with regard to Plaintiff's hypothyroidism, sleep apnea, lumbar myositis, right shoulder pain, and depression. Tr. 40.

In sum, the ALJ's RFC was supported by substantial evidence and there was no supported medical opinion in the record cited to by Plaintiff establishing greater limitations. The ALJ even mentions that the RFC "is more restrictive when compared to that offered by DDS consultant in Exhibits 1A and 3A, and even then, she is not found disabled." Tr. 41. Most importantly, Plaintiff makes no argument or cites to any evidence in the record to indicate that this limitation was not adequate to account for Plaintiff's limitations. Therefore, the ALJ properly considered Plaintiff's severe and non-severe limitations, and therefore this is not a reversible error warranting remand.

### C. The ALJ's Step Five Determination

Plaintiff alleges that, at step five, the ALJ did not correctly apply the medical vocational guidelines under 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00 (hereafter referred to as the "Grid"). ECF No. 10 at 26-27. Specifically, Plaintiff alleges that guideline 201.14 directed the ALJ to find Plaintiff disabled. *Id.*; 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.14.

Step five requires an ALJ to determine whether a claimant can perform jobs that exist in significant numbers in the national economy given her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), 404.1560(c)(2). If the claimant can perform jobs, then she is not disabled. 20 C.F.R. § 404.1566(b). If he could not, then he was disabled. *Id.*

The Grid is designed to help the Commissioner at step five to determine if jobs exist in the national economy for a given claimant "in a streamlined fashion without resorting to the live testimony of vocational experts." *Ortiz v. Sec'y of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989). The rules reflect "major functional and vocational patterns" based on data about the jobs existing in the national economy. 20 C.F.R. § 404.1569. Each rule directs a finding of "disabled" or "not disabled" based on the particular combination of the claimant's physical RFC (light work, medium work, heavy work, or very heavy work) and vocational factors (age, education, and work experience). 20 C.F.R. §404, subpart P, app. 2 § 200.00(a).

In this argument, Plaintiff relies on her own determination as to her work level, and not on the ALJ's determination. In other words, a finding of not disabled would have been the correct reading of medical vocational guideline 201.14 *if the ALJ found that Plaintiff could perform work at a sedentary exertional level*. However, as previously discussed, the ALJ did not err in determining that Plaintiff could perform light exertional work. Therefore, the proper rule to apply is medical vocational rule 202.14 at Table No. 2, for those with a maximum sustained work capability limited to *light work*, like Plaintiff, not medical vocational rule 201.14 at Table No 1, for those with a maximum sustained work capability limited to *sedentary work*.

To determine whether the Grid directs a finding of disabled, we must start with the ALJ's relevant findings. First, the ALJ found that Plaintiff had an RFC for light work. Tr. 37. Second, the ALJ found that Plaintiff was closely approaching advanced age (i.e. age 50-54). Tr. 42. Third, the ALJ found that Plaintiff has at least a high school education. *Id*. Lastly, the ALJ found that "[t]ransferability of job skills [was] not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is 'not disabled,' whether or not the claimant has transferable job skills." *Id*. (citing SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). In other words, in the context of someone like Plaintiff who, as the ALJ determined, can perform light work, is closely approaching advanced age, and has a high school graduate degree or more, medical vocational rules 202.13 through 202.15 direct a finding of not disabled for *all* levels of previous work experience – "unskilled or none," "skilled or semiskilled - skills not transferrable," or "skilled or semiskilled -skills transferable."[6] Tr. 42; ECF No. 10 at 26-27. Therefore, the ALJ correctly applied the Grid at step five in her determination that Plaintiff is not disabled.

---

[6] Plaintiff did not dispute the ALJ's determination that Plaintiff was closely approaching advanced age and had at least a high school education level.

## V. CONCLUSION

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits contained no legal error as it was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 18th day of December, 2024.

s/Marcos E. López<br>
U.S. Magistrate Judge